UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYA J. RIPLEY,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>        Defendant. | Case No. ED CV 12-2080-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On November 30, 2012, plaintiff Maya J. Ripley filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for

adjudication without oral argument.

Plaintiff presents three issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of plaintiff's treating psychiatrist; (2) whether the ALJ properly considered the opinion of the consultative examiner; and (3) whether the ALJ properly considered plaintiff's credibility. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 3-14.

Having carefully studied, inter alia, the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the limitation provided by the consultative examiner and properly discounted plaintiff's credibility. However, the ALJ improperly rejected the opinions of plaintiff's treating physician without providing specific and legitimate reasons supported by substantial evidence for doing so. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was thirty-two years old on the alleged disability onset date, has at least a high school education.[1] AR at 20, 262, 293-94. She has past relevant work experience in child care. *Id.* at 19, 64.

On August 6, 2008, plaintiff filed an application for DIB and on July 31, 2008 she filed an application for SSI benefits. *Id.* at 91, 262-68. Plaintiff alleged

---

[1] In her disability reports plaintiff indicates that she attended three years of college. AR 293-94, 352. But the name of the school she lists is "Alta Loma High School," and she indicates that she completed both high school and college in June of 1992. *Id.* at 293-94.

an onset date of June 29, 2007. *Id*. at 8, 262, 265. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing.

On April 14, 2010, plaintiff, represented by counsel, appeared and testified before the ALJ. *Id.* at 30, 33-44, 52-53. The ALJ also heard testimony from Arnold Ostrow, a medical expert, Jerry Younkin, plaintiff's mother's fiancé, and Joseph H. Torres, a vocational expert. *Id.* at 31-33, 44-52, 54.

On July 30, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 100. Plaintiff filed a Request for Review with the Appeals Council, and on September 10, 2011 the Appeals Council remanded the claims to the ALJ for further consideration. *Id.* at 140. In its remand order, the Appeals Council directed the ALJ to: re-evaluate plaintiff's medically determinable impairments at step two; further consider plaintiff's mental impairment in accordance with the technique described in 20 CFR §§ 404.1520(a) and 416.920(a); further consider plaintiff's residual functional capacity ("RFC"), and provide rationale with specific references to evidence of record; and if warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitation on plaintiff's occupational base. *Id.* at 142-43.

In light of the remand, the ALJ held another hearing on December 21, 2011. *Id.* at 58-83. Plaintiff, represented by counsel, testified as did Alan Boroskin, a vocational expert, and Marsha Record, plaintiff's mother. *Id.* On June 8, 2012, the ALJ again denied benefits. *Id.* at 21.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that the plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 29, 2007. *Id.* at 10.

At step two, the ALJ found that plaintiff suffered from the following severe

impairments: vasovagal syncope, lumbar disc disease, anxiety, depression, and auditory hallucinations. *Id.* at 10-12.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 12-15.

The ALJ then assessed plaintiff's RFC,[2] and determined she had the capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> lift and carry 20 pounds occasionally, 10 pounds frequently; sit for 6 hours; stand and walk for 6 hours; must be able to take a break every hour for one to three minutes; all postural activities are limited to occasional, except for never climbing ladders, ropes, and scaffolds; avoid intense interpersonal interactions; limited to frequent contact with the public; avoid safety operations; and no high production quota work, such as rapid assembly work.

*Id.* at 15.

At step four the ALJ found plaintiff was unable to perform any past relevant work, which was in child care. *Id.* at 19.

At step five, based upon plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were "jobs that exist in significant numbers in the national economy that the claimant can perform," including photo copy

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

4

machine operator and office helper. *Id.* at 20. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 21.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A.   The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Opinions of Plaintiff's Treating Physician

Plaintiff argues that the ALJ failed to properly consider the opinions of plaintiff's treating physician, Dr. Soor-Melka. P. Mem. at 3-11. Specifically, plaintiff contends the ALJ failed to give specific and legitimate reasons for discounting Dr. Soor-Melka's opinions. *Id.* at 7. The court agrees.

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1527(c) (prescribing the respective weight to be given the opinions of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830 (citation omitted); *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a

nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted).

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons." (citation omitted)). If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretation and explain why they, rather than the doctors', are correct." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citation omitted).

On September 15, 2011, Dr. Soor-Melka completed a medical report diagnosing plaintiff with schizophrenic disorder and noting that plaintiff was permanently incapacitated and could perform "no work." AR at 791. On October 13, 2011, Dr. Soor-Melka also completed a check-the-box form regarding plaintiff's ability to do work-related activities. *Id.* at 794-95. The form indicates various mental abilities, such as remembering procedures and instructions, paying attention, interacting with others, and handling work stress, with corresponding boxes to indicate the claimant's ability in each given area. *Id.* The levels of ability

in descending order are: "unlimited or very good," "limited but satisfactory," "seriously limited but not precluded," "unable to meet competitive standards," and "no useful ability to function." *Id.* In a majority of the categories, Dr. Soor-Melka indicated that plaintiff would be "unable to meet competitive standards." *See id.* After summarizing Dr. Soor-Melka's opinions, the ALJ stated:

> [T]his opinion is not consistent with the full medical evidence of record. The treatment notes show that the claimant's depression is not as severe as alleged (see for example Exhibits 7F; 23F). Additionally, the treatment notes show her symptoms are fairly stable even when her compliance is only noted as fair (Exhibits 26F; 31F). The full medical evidence of record shows the claimant's impairments are not as severe as indicated by Dr. Soor-Melka. Thus, no weight is given to her opinions.

*Id.* at 15.

It is unclear from the record whether Dr. Soor-Melka's opinions are directly contradicted. The ALJ does not cite a contradictory opinion regarding plaintiff's ability to work, but instead refers to the "full medical evidence of record." *Id.* Dr. Skopec, the state agency psychiatric consultant, opined that plaintiff had only moderate restriction of activities in her daily life (*id.* at 558), thus arguably contradicting Dr. Soor-Melka's opinion that plaintiff could perform no work. But the ALJ gave little weight to Dr. Skopec's findings. *Id.* at 14. Nevertheless, even assuming Dr. Soor-Melka's opinions are contradicted, the ALJ must still provide specific and legitimate reasons for rejecting the opinions of the treating physician. *See Lester*, 81 F.3d at 830.

In giving no weight to Dr. Soor-Melka's opinion that plaintiff was unable to engage in any work, the ALJ first points to exhibits 7F and 23F as examples of

evidence that plaintiff's depression is "not as severe as alleged." AR at 15. Exhibit 7F includes an evaluation completed by Dr. Schmid, one of plaintiff's treating psychologists, which notes plaintiff's reason for seeking services, her medical history, and her medications and allergies. *Id.* at 527-28. Dr. Schmid's evaluation is followed by a form titled "Current Psychiatric Complaints by Syndrome," in which symptoms are checked or circled if present. *Id.* at 529-33. Finally, exhibit 7F contains Dr. Schmid's treatment notes from October 30, 2008, November 11, 2008, November 20, 2008, December 9, 2008, and December 23, 2009. *Id.* at 534-36.

The ALJ's parenthetical cite to exhibit 7F leaves it unclear as to what specifically the ALJ found in exhibit 7F undermines Dr. Soor-Melka's opinion and shows plaintiff's depression is not as severe as alleged. Dr. Schmid noted that plaintiff had recurrent depressed mood, anhedonia, insomnia, and anergia. *Id.* at 531. Additionally, Dr. Schmid noted plaintiff's inappropriate appearance ("heavy makeup" and "malodorous") and impaired concentration. *Id.* at 531-32. Dr. Schmid's treating notes indicate plaintiff experienced dizziness, to the point of needing to lie on the floor on one occasion (*id.* at 534), and she felt fatigued with no energy "all the time." *Id.* at 535; *see also id.* at 534, 536. It is thus not readily apparent what in exhibit 7F demonstrates plaintiff's depression is not as severe as alleged.

The ALJ also cites exhibit 23F as an example of plaintiff's depression being less severe than alleged. *Id.* at 15. Exhibit 23F includes a psychiatric evaluation from Dr. Mejia on April 2, 2010 (*id.* at 649-50), and an adult clinical assessment and medication visit note by Andrea Savala, licensed marriage and family therapist, on February 24, 2010. *Id.* at 651-56. Dr. Mejia's April 20, 2010 report indicates plaintiff has major depressive disorder, is learning disabled, and has fainting spells.

9

*Id.* at 650. Dr. Savala's February 24, 2010 report indicates plaintiff has paranoid thoughts, difficulty focusing, impaired insight, and depressed mood. *Id.* at 655. Similar to exhibit 7F, it is likewise unclear what specifically about exhibit 23F demonstrates plaintiff's depression is not as severe as alleged.

The ALJ does not detail conflicting evidence and lay out his interpretations thereof (*see Magallanes*, 881 F.2d at 751) but instead simply states "see for example Exhibits 7F and 23F." AR at 15. The only evidence in exhibits 7F and 23F that appears to support the ALJ's assertion that plaintiff's depression is not as severe as alleged is the fact that Dr. Schmid gave plaintiff a GAF score of 65, indicating that plaintiff is "generally functioning well," (*id.* at 533) and the fact that Dr. Salva gave plaintiff a GAF score of 60, indicating that plaintiff has moderate symptoms. *Id.* at 650. But the ALJ's lack of specificity does not satisfy the "detailed and thorough summary of the facts and conflicting clinical evidence" required of the ALJ. *Magallanes*, 881 F.2d at 751.

In rejecting Dr. Soor-Melka's opinions the ALJ also points to exhibits 26F and 31F as evidence that plaintiff's symptoms are stable when she is on her medication. *Id.* at 15. Exhibit 26F and 31F include a list of medications plaintiff was taking by date, prepared by Dr. Soor-Melka (AR at 674-75), and corresponding notes from each of plaintiff's "medication visits" with Dr. Soor-Melka. *Id.* at 676-682, 763-785. On four of the eleven occasions that plaintiff visited Dr. Soor-Melka for a medication visit, Dr. Soor-Melka noted plaintiff's recovery update as "fairly stable on medication." *Id.* at 676-78, 764, 766-68. The ALJ does not explain how plaintiff's stability when on medication conflicts with Dr. Soor-Melka's conclusion that she can perform no work. The two are not necessarily mutually exclusive and the ALJ neither elaborates as to how this evidence contradicts Dr. Soor-Melka's opinion, nor favorably cites any other

professional opinion suggesting plaintiff is less incapacitated than Dr. Soor-Melka found.

By stating that Dr. Soor-Melka's opinions are "not consistent with the full medical evidence of record," and providing parenthetical cites with no further explanation for his conclusions, the ALJ fails to provide the specific evidence in the record required to reject the opinion of the treating physician. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required."). While the ALJ is not bound by a treating physician's opinion and, indeed, may opt to give greater weight to a consulting physician's opinion *(see Smolen v. Chater*, 830 F.3d 1273, 1285 (9th Cir. 1996)), the ALJ here failed to give specific and legitimate reasons for rejecting the treating physician's opinion in preference of another opinion. In fact, it is unclear what evidence the ALJ did rely on for his findings regarding plaintiff's mental limitations. In determining the severity of plaintiff's impairments at step three, the ALJ gave "little weight" to the state agency psychiatric consultant, Dr. Skopec, "no weight" to plaintiff's treating physician, Dr. Soor-Melka, and "no weight" to the social worker, Larry Sanchez. *Id.* at 14-15. Additionally, in determining the RFC, the ALJ again gave "little weight" to Dr. Skopec. *Id.* at 18.

The court recognizes, as defendant points out, that a treating physician's opinions are not accorded more weight if they are conclusory or not supported by medical evidence. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding an ALJ may discredit a treating physicians's opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical evidence); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because he used check-off reports that did not contain any

11

explanation of the basis for the conclusions). Dr. Soor-Melka's report did not give a detailed basis for her conclusion that plaintiff could engage in "no work" (AR at 791), and her accompanying medical evaluation of plaintiff's ability to perform work-related activities was a check the box form. AR at 794-95. But the ALJ did not address theses issues as reasons for discrediting her report. Instead, the ALJ reasoned that Dr. Soor-Melka's report was simply "not consistent with the full medical evidence of record." *Id.* at 15. The court is limited to review the reasons the ALJ asserts, not the reasons that the ALJ could have given. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

In sum, the ALJ erred in failing to provide specific and legitimate reasons for discounting the opinion of Dr. Soor-Melka.

**B.    The ALJ Properly Included the Non-Exertional Limitation Provided by Dr. Karamlou in the RFC**

Plaintiff next contends that the ALJ failed to properly consider the opinions of the consultative examiner, Dr. Azis Karamlou. P. Mem. at 11. Dr. Karamlou opined that plaintiff could do medium exertional work, with additional limitations including taking frequent breaks. AR at 18, 811-15. Plaintiff agrees with the ALJ's rejection of Dr. Karamlou's opinion that plaintiff could perform medium work, but contends that this rejection does not extend to Dr. Karamlou's opinion regarding the non-exertional limitation that plaintiff take breaks frequently. P. Mem. at 11. As such, plaintiff contends the ALJ's RFC erroneously fails to include Dr. Karamlou's suggested limitation. *Id.*

As with the treating physician, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician, and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence."

*Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citations omitted); *see also Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012). (reversing ALJ for not giving proper weight to examining psychologist's opinion).

On March 2, 2012, Dr. Karamlou performed an internal medicine consultation at the request of the Department of Social Services. AR at 811-15. He concluded that plaintiff could perform medium work, with some additional limitations. *See id.* at 815. At issue here, Dr. Karamlou opined that in an eight-hour workday plaintiff should take "normal breaks" and should "change positions frequently." *Id.* The ALJ gave "little weight" to Dr. Karamlou's opinions, stating: "Dr. Karamlou opined that the claimant would be capable of medium work with additional postural and environmental limitations (Exhibit 36F). As discussed above, the full medical evidence of record shows the claimant cannot perform medium work." *Id.* at 18. The RFC provided by the ALJ includes the limitation that plaintiff "must be able to take a break every hour for one to three minutes." *Id.* at 15. Plaintiff agrees with the ALJ's rejection of Dr. Karamlou's opinion regarding medium work, but contends that the portion of the RFC requiring hourly breaks is inconsistent with Dr. Karamlou's opinion that plaintiff should change positions frequently. For this limitation, plaintiff argues, the ALJ was required to provide separate, specific and legitimate reasons for rejection. P. Mem. at 12.

The ALJ "is required to consider all of the limitations imposed by the claimant's impairments" (*Carmickle*, 533 F.3d at 1164), but plaintiff has failed to persuade the court that the hourly breaks requirement included in the RFC constitutes a failure of the ALJ to include Dr. Karamlou's suggested limitation of "frequent" breaks. Plaintiff does not directly contend, and has failed to demonstrate, that "frequent" and "every hour for one to three minutes" are inconsistent. It appears that the ALJ not only considered but also included the need

for frequent breaks, explaining that the hourly breaks were necessary to "help prevent the onset of back pain symptoms that could preclude the performance of all work activity." AR at 17.

Thus, the RFC adequately captured the limitation provided by Dr. Karamlou. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) (finding that the inclusion of a "simple tasks" limitation in the RFC adequately encompassed and was consistent with pace and mental limitations suggested by a treating physician).

### C.   **The ALJ Properly Discounted Plaintiff's Credibilty**

Lastly, plaintiff alleges the ALJ failed to give clear and convincing reasons for rejecting plaintiff's credibility. P. Mem. at 13. Specifically, plaintiff alleges that the ALJ only discredited plaintiff's credibility regarding her mental impairments but failed to evaluate plaintiff's credibility with regard to her physical impairments. *Id.* at 13, 19-23. Having carefully reviewed the record, the court disagrees.

The Commissioner must make specific credibility findings, supported by the record. Social Security Regulation 96-7p. To determine whether testimony concerning symptoms is credible, the Commissioner engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the Commissioner must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, an ALJ may reject the claimant's testimony upon (1) finding evidence of malingering, or (2) "offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton*, 331 F.3d at 1040.

General assertions that the claimant's testimony is not credible are

insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834). The Commissioner may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. Additionally, contradictions in the record may support rejection of credibility. *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010).

      Here, the ALJ here found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." AR at 16. The ALJ provided several reasons for discounting plaintiff's credibility. *Id.* at 18-19.

      Foremost, there is affirmative evidence of malingering in the record. AR at 18-19, 660. On May 27, 2010, plaintiff underwent a complete psychological evaluation at the request of the Department of Social Services (*id.* at 657) due to reports of a psychological condition but lack of a treatment record to support her diagnosis. *Id.* at 18. The consultative examiner, Dr. Goldman, noted that the trail making test she administered, a test designed to test an individual's attention and concentration, was invalid due to plaintiff's lack of effort and "alleged inability to complete" the test. *Id.* at 660. Additionally, the Minnesota Multiphasic Personality Inventory Dr. Goldman administered provided an invalid profile and indicated plaintiff over reported "psychopathology in an attempt to appear more

disturbed than she is in reality." *Id.* Dr. Goldman concluded that plaintiff's "functional limitations were unable to be accurately assessed due to malingering." *Id.* at 661. This evidence of malingering was a sufficient basis for the ALJ to conclude plaintiff was not credible.

Furthermore, although he was not required to, the ALJ provided clear and convincing reasons for rejecting plaintiff's credibility. The ALJ discounted plaintiff's credibility because: (1) her allegations were inconsistent with the objective medical evidence of record; and (2) she attempted to rely on the non-credible statements of her mother. *Id.* at 18-19.

The ALJ's first ground for discounting plaintiff's credibility was the inconsistency of her allegations with the objective medical evidence in the record. AR at 18. Specifically, the ALJ noted that plaintiff initially alleged that she only suffered from physical impairments (*id.* at 287), and only after her initial case was denied did she allege the addition of mental impairments. *Id.* at 18, 351, 386. This in spite of the fact that her mother maintains she was in special education classes during all of her year of education. *Id.* at 18. Moreover, plaintiff noted that she stopped working because of her back pain, not because of any mental deficiency. *Id.* These inconsistencies are a proper basis for the ALJ to discount plaintiff's credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Second, the ALJ found that plaintiff's observed capabilities and performance at her consultative exams demonstrated that she is more capable than her mother alleged, and that plaintiff's credibility was adversely affected by her attempt to rely on the statements of her mother in support of her disability application. AR at 19. This transference of the mother's lack of credibility to the plaintiff is not persuasive and is unsupported by case law. But because there was affirmative evidence of malingering and the ALJ provided clear and convincing evidence in ground one to

support a finding that plaintiff's testimony was not credible, any error here would be harmless. *Batson*, 359 F.3d at 1197 (holding harmless ALJ's partial reliance on assumption unsupported by record where ALJ gave numerous other record-supported reasons for adverse credibility finding).

Plaintiff essentially argues that the ALJ was required to provide specific evidence for why each of plaintiff's individual allegations of disability, physical and mental, are not credible. This is an unduly narrow reading of the ALJ's duty and is not supported by case law. An ALJ must, in the absence of evidence of malingering, specifically identify evidence that undermines the plaintiff's credibility. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). This does not require that the ALJ parse each of the plaintiff's allegations and explain why each is credible or not credible. Instead, the Ninth Circuit has found it appropriate for an ALJ to infer that a plaintiff's lack of credibility with regard to certain statements carries over to the plaintiff's other allegations. *Thomas*, 278 F.3d at 959 (plaintiff's "lack of candor [regarding her drug use] carries over to her description of physical pain"); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (plaintiff's inconsistent statements regarding his drinking habits warranted a finding that plaintiff's testimony of pain and fatigue were also unbelievable "in general").

Because there was affirmative evidence of malingering and the ALJ cited specific evidence undermining plaintiff's credibility, substantial evidence supports the ALJ's adverse credibility determination and this court will not engage in second-guessing. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1995) (where the ALJ makes specific findings, supported by substantial evidence, justifying an adverse credibility determination, it is not the court's role to second guess).

### D.     Remand Is Appropriate

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

As discussed above, remand is required because the ALJ erred in failing to provide specific and legitimate reasons for rejecting the opinions of plaintiff's treating physician. On remand, the ALJ shall reconsider the opinions provided by Dr. Soor-Melka, and either credit her opinions or provide adequate reasons under the appropriate legal standard for rejecting any portion of her opinions. The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: October 22, 2013

_____
SHERI PYM
United States Magistrate Judge

19